IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


UNITED STATES OF AMERICA,

                Plaintiff,

     v.

SHAWN TERRELL CRANE,

                Defendant.

No. 3:17-cr-00066-HZ-1

OPINION & ORDER

Leah K. Bolstad
Julia E. Jarrett
Peter D. Sax
U.S. Attorney's Office
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Amy E. Potter
U.S. Attorney's Office
405 E. 8th Avenue, Suite 2400
Eugene, OR 97401

     Attorneys for Plaintiff

Alison M. Clark
Office of the Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204

Attorneys for Defendant

HERNÁNDEZ, District Judge:

Defendant moves to vacate his sentence under 28 U.S.C. § 2255. The Government

opposes the motion. The Court held an evidentiary hearing on Defendant's motion on April 14,

2021, and received evidence. The Court grants in part Defendant's motion to vacate his sentence.

## BACKGROUND

In February 2017, a grand jury indicted Defendant for conspiracy to distribute oxycodone

(Count 1) and conspiracy to launder drug proceeds (Count 2). Indictment, ECF 24. Defendant

was later charged by superseding indictment with carrying and using a firearm in the commission

of a drug trafficking crime (Count 3). Superseding Indictment 15, ECF 111.

## I.     Plea

Defendant, while represented by retained counsel Gary Bertoni, pleaded guilty to Counts

1 and 2, engaging in a conspiracy to distribute oxycodone and a conspiracy to launder drug

proceeds, in May 2018. Plea Agrt., ECF 256. In exchange for the plea, the Government agreed to

dismiss Count 3, using a firearm in the commission of a drug trafficking crime. *Id.* at 1. The

parties agreed that the maximum sentence for Counts 1 and 2 was 240 months. *Id.* at 3. The

parties agreed that the base offense level was 32. *Id.* The parties agreed to upward adjustments

for money laundering, Defendant's role in the conspiracy, and his use of a dangerous weapon. *Id.*

The parties also agreed to a three-level downward adjustment for acceptance of responsibility

under U.S.S.G. § 3E1.1 and a two-level downward adjustment under the 18 U.S.C. § 3553(a)

factors. *Id.* The Government agreed not to recommend a sentence enhancement under 21 U.S.C.

§ 851 for Defendant's prior felony convictions. *Id.* Defendant agreed not to appeal his conviction or sentence or collaterally attack it, except to challenge his conviction and sentence on the grounds of ineffective assistance of counsel under 28 U.S.C. § 2255. *Id.* at 4.

Murdoch Walker II, a lawyer from Atlanta, Georgia, joined Defendant's defense team on July 9, 2018. Mot. Leave Appear Pro Hac Vice, ECF 282. Mr. Walker's Pro Hac Vice application said that he had associated with local counsel Edward Kroll.[1] *Id.* at 4. On November 14, 2018, Mr. Bertoni withdrew as Defendant's counsel, and Mr. Walker became Defendant's lead counsel during the sentencing phase. Order, ECF 331. Sentencing, after several continuances, occurred on April 30, 2019, nearly a year after Defendant had pleaded guilty. Sent. Tr. 1, ECF 436.

## II.     Sentencing

In preparation for sentencing, Mr. Walker filed a notice on March 21, 2019, which stated that Defendant "does not intend to submit a Sentencing Memorandum in anticipation of Mr. Crane's Sentencing Hearing[.]" Not. Re Sent. Mem. 1, ECF 380. Probation filed a Presentence Investigation Report (PSR) on March 21, 2019. PSR, ECF 381. The PSR calculated a total offense level of 35 with a criminal history category VI, which resulted in a sentencing guidelines range of 292–365 months, and the PSR author recommended a concurrent sentence of 235 months' imprisonment for each count. *Id.* at 1. The PSR noted that the parties had agreed to a two-level reduction under § 3553(a) factors which would reduce the guideline range to 235–293 months and noted that the Government had agreed to recommend a sentence no higher than the applicable guideline range if Defendant demonstrated acceptance of responsibility. *Id.* The PSR

---

[1] Mr. Kroll testified that he agreed to associate as local counsel with Mr. Walker. After that single conversation, however, Mr. Kroll was unable to reach Mr. Walker, did not hear from Mr. Walker again, and did not receive payment from Mr. Walker.

included an addendum which reflects that the probation officer updated the PSR at Mr. Walker's request to include details about Defendant's upbringing and history of drug and alcohol addiction at the time of his arrest. PSR Addendum 1, ECF 381.

The Government filed a sentencing memorandum on March 27, 2019. Gov. Sent. Mem., ECF 384. The Government's sentencing memorandum explained that Defendant's upcoming sentencing would be Defendant's fourth federal sentencing and argued that Defendant trafficked not only in oxycontin, but also in violence. *Id.* at 1–2. The Government argued that Defendant's history of violence included stomping someone and bludgeoning another person with a baseball bat, crushing the person's nose and denting their skull. *Id.* at 2. The memorandum also detailed the results of the investigation leading to the charges against Defendant, including descriptions of incriminating conversations intercepted by wiretap and a video investigators seized from Defendant's cell phone showing Defendant using a gun to threaten a drug customer. *Id.* at 4; Sent. Memo Ex. 1, ECF 387. The Government's sentencing memorandum explained that the Government had agreed to recommend a sentence no higher than the 168–210-month guideline range stipulated to in the plea agreement (after applying the 2-level downward variance for factors under § 3553(a)). *Id.* The Government's sentencing memorandum recommended a sentence of 168 months. *Id.* at 17. The Government argued that the Court should reject any additional downward variance proposed by Defendant. *Id.* at 17–18.

On March 30, 2019, Mr. Walker filed an unopposed motion to delay the sentencing hearing for three weeks because "some important sentencing-related matters ha[d] arisen[.]" Def. Mot. Cont. 2, ECF 388. The Court granted the motion and reset the sentencing for April 30, 2019. Order, ECF 389. Despite the delay of Defendant's sentencing, Mr. Walker did not submit a sentencing memorandum on Defendant's behalf.

At the April 30, 2019 sentencing, the Court discussed with Defendant and Mr. Walker that the Court had received an email suggesting that Defendant may wish to retain new counsel before his sentencing. Defendant confirmed that he had spoken with Mr. Walker and had decided not to retain new counsel for sentencing. Sent. Tr. 4:22–5:14. Mr. Walker presented to the Court a few letters written in support of Defendant. *Id.* 3:13–17. The parties agreed that the sentence should be calculated using a total offense level of 30 with a criminal history category of VI. *Id.* 14:12–18. A total offense level of 30 with a criminal history category of VI produced a guidelines range of 168–210 months. U.S.S.G. ch. 5, Pt. A.

The Government presented the video of Defendant using a gun to threaten a drug customer during the sentencing hearing. *Id.* 16:1–8; Sent. Memo Ex. 1. The Government argued that a 168-month sentence was appropriate because Defendant had committed the relevant crimes while he was on supervised release for a prior federal conviction, displayed alarming acts of violence, and used a firearm in furtherance of drug trafficking. Sent. Tr. 14:21–18:24. The Government asked the Court to impose a 168-month sentence. *Id.* 18:19–20.

Mr. Walker began his argument by emphasizing that nearly every applicable sentencing guideline had been stipulated to between the parties. *Id.* 17:13–16. He emphasized that without credit for acceptance of responsibility and the two-level variance, Defendant's sentence would be a guideline range of 240 months; but with acceptance of responsibility and the two-level variance, his guidelines range barely reduced to 235–240 months. *Id.* 19:3–9. Mr. Walker argued that Defendant would not receive any practical benefit in his sentence from the credit for acceptance of responsibility and the two-level variance. *Id.* 20:21–21:3. Mr. Walker asked the Court to adjust the Government's 168-month sentencing recommendation downward so that Defendant would receive the benefit of those reductions agreed to by the Government but not

incorporated into its sentencing recommendation. *Id.* 22:12–20. Ultimately, Mr. Walker asked the Court to impose a 110-month sentence. *Id.* 22:21–23:1. He also argued that Defendant should get a sentence of 110 months to avoid a sentencing disparity between Defendant and a co-Defendant named Mr. Lamadrid who Mr. Walker described as the supervisor of the conspiracy and the "but-for reason that [Defendant] had the opportunity to engage in the incident conspiracy." *Id.* 23:5–12; 23:17–24:9. Mr. Walker pointed out that Defendant Lamadrid received an eighty-seven-month sentence, and the Government had recommended that the Court impose a sentence of 180 months on Defendant Lamadrid. *Id.* 23:22–24:9.

Turning to the sentencing factors, Mr. Walker emphasized that Defendant came from a family with an extensive criminal history, and his parents had been incarcerated for a great deal of Defendant's childhood. *Id.* 24:21–25:2. He also argued that Defendant had been burned with cigarettes, sexually assaulted, and witnessed the death of his best friend as a youth. *Id.* 25:4–7. Mr. Walker argued that Defendant has depression and has at times become suicidal, which Mr. Walker argued was an obvious consequence of Defendant's upbringing. *Id.* 25:7–10.

Mr. Walker explained that the Court should consider that Defendant's upbringing left him with no guidance in an environment that hurt him and was cruel to him, which leads many people to find camaraderie among people with similar experiences. *Id.* 25:16–25. The result of those experiences, Mr. Walker argued, was that people like Defendant

> . . . have no education. They have no guidance. They have essentially no morals, because they can't. They haven't been afforded [sic] to see that side of things. And that's exactly what Mr. Crane is. He's the product of being around people who he had no choice but to be around, make bad decisions. Those decisions have resulted in crime."

*Id.* 25:25–26:7.

Mr. Walker characterized Defendant's criminal history category as "completely atrocious." *Id.* 26:19. He argued, however, that Defendant's "atrocious" criminal history had

been factored into the calculated guideline range and into the parties' plea agreement, under which the Government had recommended a 168-month sentence, so the Court should give them no further consideration. *Id*. 27:9–25. When discussing the characteristics of the offense, Mr. Walker referred to some "suppositions" in the Government's sentencing memorandum that he argued would be improper for the Court to consider to determine Defendant's sentence from an evidentiary standpoint, but he did not explain what he meant. *Id.* 28:15–29:2. Mr. Walker concluded by asking the Court to impose a sentence of no greater than 110 months. *Id.* 29:15–23.

In response to Mr. Walker's arguments about not receiving the full benefit of the downward adjustments, the Government argued that because it had agreed to dismiss Count 3, the 18 U.S.C. § 924(c) charge, which has a statutory maximum of life, Defendant already had received a significant sentencing benefit from the dismissal of that charge. *Id.* 30:6–14. The Government also explained that Defendant Lamadrid was treated similarly to Defendant in terms of calculating his sentence, but Defendant Lamadrid had a much lower criminal history category of III. And, there was no evidence that Defendant Lamadrid had used a firearm in connection with his offenses, which explained the difference between the Government's sentencing recommendations for Defendant and Mr. Lamadrid. *Id.* 32:1–25.

Mr. Walker responded to the Government's arguments by arguing that credit for acceptance of responsibility specifically relates to Defendant's actions in timely pleading guilty and allowing the Government to avoid the expense of trial, not to other considerations. He argued that under various cases which evolved into the present policy contemplated by the United States Sentencing Commission, the Court should give Defendant credit for acceptance of responsibility in addition to other departures. *Id.* 34:9–36:22. Mr. Walker then reiterated his request for a 110-month sentence and asked that if the Court declined to give the two-level

downward variance, the Court at least reduce the Government's recommendation by the acceptance of responsibility credit and order a sentence of 130 months. *Id.* 37:3–10. Defendant then spoke about his difficult past and how he had changed in the twenty-seven months he had served before sentencing. *Id.* 37:13–39:12.

When the Court imposed Defendant's sentence, the Court discussed that with a base offense level of 30 and a criminal history category VI, Defendant had a guideline range of 168 to 210 months. *Id.* 39:14–21. The Court discussed that the circumstances of the offense involved a vast drug distribution conspiracy in which it appeared that Defendant was in charge. *Id.* 39:22–40:3. The Court also discussed the long and violent nature of Defendant's criminal history, which had led the Government to prosecute him four times in federal court for serious offenses. *Id.* 40:1–42:19. The Court noted that before reviewing the sentencing materials, it had concluded that it should impose a sentence of 240 months. After considering parties' arguments, the Court concluded that the Government's recommendation of 168 months was the lowest term of imprisonment that the Court should impose. *Id.* 41:11–18; 42:19–21.

After imposing the 168-month sentence, the Court observed that Defendant had waived some or all of his appeal rights in his plea agreement and advised Defendant that those waivers generally are enforceable. *Id.* 43:25–44:2. The Court advised Defendant that if he wanted to file an appeal, he should discuss that with his lawyer, and his lawyer should file a notice of appeal within fourteen days of the sentencing. *Id.* 44:3–10.

### III.    Post-Sentencing

Defendant alleges that immediately after the April 30, 2019 sentencing, Defendant orally asked Mr. Walker to file a notice of appeal. Def. Mot. Vacate Sent. (Def. Mot.) 5, ECF 438; Def. Am. Mot. Vacate Sent. (Def. Am. Mot.) 11, ECF 474. According to Defendant, Mr. Walker

disagreed with Defendant about whether there were any grounds for an appeal, but "[Defendant] did not withdraw his request." Def. Am. Mot. 11. In his initial motion, Defendant stated that the reason he did not file a direct appeal was: "appeal waiver per plea agreement negotiated by attorney Gary B. Bertoni." Def. Mot. 4. He elaborated that "[a]fter [his] April 30, 2019 sentencing, he requested counsel, Murdoch Walker II, to file a notice of appeal. No appeal was filed. . . . Counsel failed to file a timely notice of appeal." *Id.* at 5. Defendant did not testify at the evidentiary hearing.

Mr. Walker submitted a declaration and testified at the evidentiary hearing. He attested that he spoke to Defendant after his sentencing to discuss Defendant's options for direct appeal and for collaterally attacking his sentence. Gov. Resp. Ex. 3 ("Walker Decl.") at 4, ECF 449-3. Mr. Walker said that the conversation lasted between twelve and eighteen minutes. *Id.* Mr. Walker agrees with Defendant that during that conversation Mr. Walker advised Defendant against pursuing a direct appeal because of the appellate waiver provision in the plea agreement and for other reasons. *Id.* Mr. Walker attested that he told Defendant that a direct appeal would be fruitless, that Defendant would risk losing the significant downward departure that he received at sentencing, and that an appeal might result in a greater term of imprisonment than the Court had just imposed. *Id.* at 4–5. Mr. Walker told Defendant that an appellate court would consider a direct appeal frivolous. *Id.* Mr. Walker claims that Defendant "unequivocally understood these details, and never responded in a manner that exhibited to me an impression that he was considering a direct appeal." *Id.*

After Mr. Walker discussed Defendant's collateral attack options with him, Mr. Walker said that Defendant "explicitly stated that he did not wish to pursue a direct appeal[] and that he retained interest in a collateral attack." *Id*. at 5–6. Mr. Walker did not file a notice of appeal.

Mr. Walker talked with Defendant's girlfriend, Brittany Paris, twice after sentencing to answer her questions about transport logistics. *Id*. at 6–7. Ms. Paris did not mention an appeal during either phone call. *Id*. Mr. Walker received an invitation from Defendant to communicate by email through the prison email system, CorrLinks, on May 29, 2019. *Id*. at 7. Mr. Walker testified that he did not accept the invitation and never read the email. He testified that Defendant still owed him a balance, and he had intended to connect with Defendant after Defendant paid his balance about whether Defendant would retain him to represent Defendant in a collateral attack. Mr. Walker learned on June 19, 2019, that Defendant had retained other counsel. *Id.*

## STANDARD

Courts use a two-part test to determine whether a defendant has received constitutionally deficient assistance of counsel. *Premo v. Moore*, 562 U.S. 115, 121 (2011). Under that test, a defendant must prove that counsel's assistance was deficient and that the deficient performance prejudiced the defense. *Id.*; *see also Schurz v. Ryan*, 730 F.3d 812, 815 (9th Cir. 2013) (the defendant must show not only that counsel's performance was deficient but that the deficient performance prejudiced the defendant.).

To prove the deficiency of counsel's performance, the defendant must show that counsel made errors so serious that the "'representation fell below an objective standard of reasonableness'" under prevailing professional norms. *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance. *Strickland*, 466 U.S. at 688.

To assess whether counsel's performance was deficient, courts must "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance' and make every effort 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689). Ultimately, the defendant's "burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

"To satisfy the prejudice prong under *Strickland*, a defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Saesee v. McDonald*, 725 F.3d 1045, 1048 (9th Cir. 2013) (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 695).

## DISCUSSION

Defendant argues that Mr. Walker provided ineffective assistance of counsel during the sentencing phase because Mr. Walker did not file a sentencing memorandum on Defendant's behalf and failed to adequately prepare for the sentencing. Defendant also argues that Mr. Walker provided ineffective assistance of counsel when Defendant asked Mr. Walker to file a notice of appeal, and Mr. Walker failed to file a notice of appeal.

## I.     Counsel's Performance During Sentencing Phase

### A.     Deficient Performance

Defendant's first argument is that Mr. Walker's performance was constitutionally deficient because, in the face of a 20-year sentence, Mr. Walker failed to file a sentencing memorandum. Def. Am. Mot. 1. Defendant argues that although not required, it is standard practice in this district for defense counsel to file a sentencing memorandum, and Mr. Walker's

failure to do so thus fell below an objective standard of reasonableness under prevailing professional norms.

The Supreme Court has held that *Strickland* applies to sentencing proceedings. *Glover v. United States*, 531 U.S. 198, 202–04 (2001). Defense counsel "must, 'at a minimum, conduct a reasonable investigation enabling [them] to make informed decisions about how best to represent [their] client.'" *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) (quoting *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994)) (emphasis omitted). Failure to investigate or adequately prepare for sentencing may render counsel's performance ineffective. *Wiggins v. Smith*, 539 U.S. 510, 522–23 (2003); *Williams v. Taylor*, 529 U.S. 362, 395 (2000).

Mr. Walker testified that his failure to file a sentencing memorandum was intentional. He testified that he planned to raise a novel argument during the sentencing hearing to support his request that the Court impose a sentence lower than the Government's proposed sentence of 168 months, and he did not want the Government to have a chance to prepare to address the argument before the sentencing. Mr. Walker testified that when deciding whether to file a sentencing memorandum, he always looks to the local rules of the district to determine whether his client is required to file a sentencing memorandum. He testified that in this case, he looked to the local rules, determined that a sentencing memorandum was not required, and decided not to file one after conferring with his law partner. Mr. Walker testified that he filed a notice to advise the Court that he did not intend to file a sentencing memorandum on Defendant's behalf because the sentencing scheduling order required notice if a party opted not to file a sentencing memorandum. The Minutes of Proceedings concerning Defendant's entry of a guilty plea included a scheduling order for the sentencing that read, in part:

> Sentencing is set for 8/8/2018 at 11:00 AM in Portland Courtroom 14B before Judge Marco A. Hernandez. . . . **Simultaneously filed Sentencing Memos are due**

**no later than WEDNESDAY of week before sentencing by NOON (and by end of day deliver a hard copy to Clerk's Office Attn: Jennifer Paget, Courtroom Deputy).** If the Sentencing Memos are not received on time, or the Court is not advised that none will be filed, the sentencing may be rescheduled. Defendant is granted leave to file sentencing memorandum and accompanying documents under seal without further motion or order, if same contains confidential information.

Minutes of Proceedings, ECF 254 (emphasis in original). Mr. Walker testified that he talked with Mr. Bertoni, Defendant's former counsel, about whether to file a sentencing memorandum. Mr. Bertoni told Mr. Walker that it was common practice in this district to file a sentencing memorandum and that, in Mr. Bertoni's estimation, the Court would expect a sentencing memorandum. Mr. Walker also testified that the Assistant U.S. Attorney (AUSA) on the case left him a voicemail message asking him if he planned to file a sentencing memorandum and testified that the AUSA had informed him that filing a sentencing memorandum was common practice in this district.

Despite his knowledge of local practice, Mr. Walker testified that he did not believe that filing a sentencing memorandum would benefit Defendant, and he made the strategic decision not to file a memorandum so that the Government would not have time to prepare to respond to his arguments before sentencing. Mr. Walker also emphasized that because this case was what he believed to be a straightforward drug conspiracy case and he was not making any complicated arguments that would require the Court to perform extensive research, that fact also weighed in favor of his decision not to file a sentencing memorandum.

The Court finds that Mr. Walker's strategic decision not to file a sentencing memorandum, alone, did not fall below an objective standard of reasonableness. In arguing that his counsel's performance was deficient, Defendant relies on a case brought under § 2254 in which a judge in this district found that a state court defendant's trial counsel provided ineffective assistance in part because counsel failed to file a sentencing memorandum. In that

case, the defendant's counsel failed to file a sentencing memorandum, despite the state filing one, and called none of the defendant's family members who were present in the courtroom to testify or provide affidavits in support of the defendant. *Martinez-Ayala v. Taylor*, No. 2:16-cv-00044-SB, 2019 WL 4132015, at *13–14 (D. Or. Mar. 28, 2019), *adopted*, 2019 WL 3247187 (D. Or. July 19, 2019) (emphasizing that "[t]rial counsel offered no testimony, no affidavits, no letters of support, no photographs, and no documentary evidence"). The court found that the defendant had a compelling story to tell that may have influenced the sentencing court's decision-making if one of his family members had told his story during the sentencing. *Id.* at *14. Instead, the sentencing judge heard only from an officer called by the prosecution. *Id.* The court found that the combination of trial counsel's failure to call witnesses, provide documents to substantiate his compelling story, file a sentencing memorandum, or offer any mitigating evidence—in the face of a twenty-five-year sentence against a man whose only criminal history was a misdemeanor from making a false statement during a traffic stop in 1990—amounted to performance that fell below an objective standard of reasonableness. *Id.*

The facts of *Martinez-Ayala* are distinguishable. In this case, Mr. Walker offered mitigating evidence by providing information to the presentence investigator about Defendant's troubled upbringing and history of physical and sexual abuse, which the investigator incorporated into the presentence report, and Mr. Walker argued those facts to the Court during sentencing. Mr. Walker also submitted letters of support at the sentencing. No Government witnesses testified at Defendant's sentencing. Although Mr. Walker did not file a sentencing memorandum on Defendant's behalf, he did not, in addition to that, ignore a substantial amount of available mitigating evidence and fail to submit any letters of support as did the trial counsel

in *Martinez-Ayala*. Consequently, *Martinez-Ayala* does not compel the conclusion that Mr. Walker's performance was deficient solely because he failed to file a sentencing memorandum.

Mr. Walker explained that his decision not to file a sentencing memorandum was purely strategic and intended to surprise the Government with his arguments at sentencing. Tactical decisions "cannot form the basis of a claim for ineffective assistance of counsel" if they are reasonable. *Sexton v. Cozner*, 679 F.3d 1150, 1160 (9th Cir. 2012) (citing *Strickland*, 466 U.S. at 689). Mr. Walker researched the local rules and discussed whether to file a sentencing memorandum with his law partner and his former co-counsel before making the informed decision not to file a sentencing memorandum. The Court agrees that Mr. Walker's decision not to file a sentencing memorandum was a reasonable tactical decision in light of his plan to make the arguments during the sentencing hearing.

Failure to file a sentencing memorandum is not deficient performance if counsel "orally made the same arguments for a lighter sentence that [counsel] would have made in a sentencing memorandum." *United States v. Ibarra*, No. SACV 11-1574-AG, 2012 WL 13075728, at *4 (C.D. Cal. Oct. 1, 2012). The court in *Ibarra* relied on *United States v. Labrada-Bustamante* in reaching that conclusion. *Id.* In *Labrada-Bustamante*, the Ninth Circuit held that although counsel failed to file written objections to a PSR, because counsel made objections on the record and the court considered them, counsel did not provide ineffective assistance. 428 F.3d 1252, 1260–61 (9th Cir. 2005) (holding that because the court considered the oral objections, the defendant could not establish prejudice). Thus, whether Mr. Walker provided Defendant effective assistance of counsel depends on his performance during the sentencing hearing.

The Court next examines the arguments Mr. Walker made during the sentencing hearing. The Court finds that Mr. Walker's performance during the sentencing hearing fell below an objective standard of reasonableness.

Mr. Walker's arguments during sentencing were meandering, based on what seems to be overruled and non-binding precedent, and made little sense to the Court when he made them. Mr. Walker began by describing the plea agreement. Sent. Tr. 17:13–18:24. He emphasized the "level of negotiation" that went into the plea agreement for a reason that is unclear to the Court. *Id.* Mr. Walker explained that without the reduction for acceptance of responsibility and the two-level variance the Government had agreed to, Defendant faced a statutory maximum of 240 months. *Id.* 18:25–19:6. But with both reductions, his guidelines range decreased only marginally to 235–240 months. *Id.* 19:6–9. Mr. Walker then argued that the Court should consider a 1995 Eleventh Circuit case called *United States v. Rodriguez*:

> I say this because there is case law, albeit it's 1995, US v. Rodriguez. This seems to be the ones [sic] that's most prominent. That's out of the 11th Circuit, but other circuits have referenced that. What it suggests is that if there is a defendant who has entered into a plea agreement, and the Government has received the benefit of avoiding prosecutorial autonomy, and that plea agreement has a guide – or the defendant has an applicable advisory guideline range that's well over a mandatory maximum, it receives the acceptance of responsibility credit and it's still over the mandatory maximum credit that it would warrant under the mandatory guideline scheme mind you, Your Honor, a departure to give credit for the acceptance of responsibility which Congress and which the United States sentencing commission have assigned it with regard to avoiding the prosecution and preparing for trial alone. That it would justifiably give justification for a downward departure pursuant to 5K 2.0, I think. Or no, sorry, Your Honor, the provision that is essentially the catchall for what the United States sentencing commission had not contemplated.

*Id.* 19:10–20:7. After delivering this confusing argument, Mr. Walker then acknowledged that *Rodriguez* was issued when the sentencing guidelines were mandatory, not advisory, and "[t]hat holding is no longer applicable in the sense that it justifies a departure." *Id.* 20:10–11. Mr. Walker continued,

The subsequent cases, because of Gall and because of Fanfan and because of Booker now, and with the United States sentencing guidelines and with the federal sentencing statute and the factors therein, the circuit courts have essentially resolved that holding. There is now the remedy of justification under the factors, under the discretionary authority of the Court at sentencing and pursuant to its obligations.

The reason I say this, Your Honor, is that he received absolutely no benefit with regard to those two provisions. Those two provisions have been negotiated as stipulations within the plea agreement. And presumably Mr. Crane, prior counsel, the Government, all included those to give some benefit to Mr. Crane. The practical effect is there has not been a benefit.

*Id.* 20:11–21:3.

According to Mr. Walker, *Rodriguez*, which he referred to without providing a citation, applied to the mandatory sentencing guidelines—before the sentencing guidelines became advisory—when courts could apply a downward departure to a statutory maximum for acceptance of responsibility. What Mr. Walker meant when he referred to *Gall*, *Fanfan*, and *Booker*—again, without citation—is unclear, as is his observation that "the circuit courts have essentially resolved that holding." Mr. Walker seemed to suggest that those cases are no longer applicable law after the sentencing guidelines became advisory. Nonetheless, Mr. Walker seemed to argue that the Court should apply those cases to determine Defendant's sentence.

Next, Mr. Walker again emphasized that every provision of the plea agreement had been exhaustively negotiated. *Id.* 21:9–15. He then reiterated that without the credit for acceptance of responsibility, the guideline range would apply, but with a three-level downward variance, the Government had recommended 168 months. *Id.* 21:15–20, 21:4–6. Mr. Walker acknowledged that Defendant had received some benefit from the statutory maximum and argued that "[t]he benefit of the cap, though, is a benefit of the entire negotiated agreement, two provisions of which he has not fully benefited from." *Id.* 21:22–24.

Mr. Walker concluded his argument with a request that "in essentially consecutive fashion, rather than concurrent fashion, because it's prohibited under the justifications and support for the Government's motion, the acceptance of responsibility credit should be granted to Mr. Crane under a variance justification, either just punishment or sufficient greater – not greater than necessary sentence."[2] *Id.* 22:1–8. He continued,

> Additionally I think, and I respectfully submit that the two-level downward variance, as stipulated in the plea agreement, ought to – Mr. Crane ought to have credit for that as well. With that said, and just alone on the acceptance of responsibility stipulated-to agreement for a three-level reduction of which he has not received, and a two-level variance for which he has not received, that would have five levels from the point of 168 months of imprisonment on top of the justification for the motion that the Government has filed.

*Id.* 22:9–20.

Mr. Walker thus argued, apparently based on the policy reasons reflected in overruled caselaw, that the three-level adjustment for acceptance of responsibility and a two-level variance under § 3553(a) that the Government had agreed to in the plea agreement should be taken from the starting point of the Government's 168-month recommendation—the low end of the applicable guideline range after applying those adjustments—to reduce Defendant's sentence to 110 months, because Defendant did not receive much benefit from those reductions due to the operation of the 240-month statutory maximum.

The Court, with no time to make sense of Mr. Walker's confusing oral argument during the sentencing because he had not filed a sentencing memorandum, did not understand Mr. Walker's argument at the time he made it. Mr. Walker's testimony at the evidentiary hearing

---

[2] No motions were pending at the time of the sentencing hearing. It is unclear to the Court what motion Mr. Walker referred to here.

clarified his strategy to obtain the lowest sentence possible, but it was difficult to understand during the sentencing hearing without the benefit of a sentencing memorandum.

Had Mr. Walker filed a sentencing memorandum clearly explaining, with citations, the holdings of *Rodriguez*, *Gall*, *Fanfan*, and *Booker*, and their relevance to his request for a 110-month sentence in this case, the Court would have been able to properly evaluate his argument. Alternatively, if Mr. Walker had delivered a clear argument during sentencing articulating those points and why he believed the Court should re-apply the downward adjustments to the advisory range (which was the result of applying those adjustments to begin with), the Court would have been able to properly evaluate his argument. By both failing to file a sentencing memorandum and failing to clearly articulate his arguments during the sentencing hearing, the Court was left unable to make much sense of the arguments he made on Defendant's behalf. As a result, Mr. Walker's performance fell below an objective standard of reasonableness.

B.      Prejudice

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. When an ineffective assistance of counsel claim stems from deficient performance during sentencing, to establish prejudice, the defendant must show a reasonable probability that but for counsel's unprofessional errors, the defendant would have received a lesser sentence. *See Glover*, 531 U.S. at 203 ("[A]ny amount of [additional] jail time has Sixth Amendment significance."); *Fleming v. Borg*, 15 F.3d 1084, at *2 (9th Cir. 1993) (mem.) (affirming district court's denial of petitioner's ineffective assistance of counsel claim on prejudice grounds because the petitioner failed to show that he "would have received a shorter sentence").

Criminal defendants have a right to have their positions understood. That concept is amongst the foremost imperatives of counsel. The effect of Mr. Walker's unintelligible oral argument at sentencing and his failure to file a sentencing memorandum is that this Court sentenced Defendant without having understood some of the arguments made on his behalf. Counsel's failure to adequately explain Defendant's position under these circumstances creates a reasonable probability that if Defendant had received effective assistance of counsel during sentencing, he would have received a lesser sentence. As a result, Defendant has met his burden to establish prejudice, and he is entitled to a new sentencing hearing.

## II.    Failure to File a Notice of Appeal

Defendant argues that immediately after his sentencing, he told Mr. Walker to file an appeal. The *Strickland* test applies to claims "that counsel was constitutionally ineffective for failing to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The conduct of a lawyer who disregards the defendant's specific instruction to file a notice of appeal is per se deficient performance under *Strickland*, prejudice is presumed, and the defendant has a right to file an appeal. *Id.* at 484.

Defendant has failed to meet his burden to show that he instructed Mr. Walker to file an appeal. Defendant offered no evidence to support his claim that he directed Mr. Walker to file an appeal beyond his statement in his original motion to vacate his sentence that he told Mr. Walker to do so. Def. Mot. 5. Mr. Walker explained in both his declaration and his testimony during the evidentiary hearing that after the sentencing hearing, he talked with Defendant in a conference room in the U.S. Marshal's office. Mr. Walker explained to Defendant—as had the Court—that Defendant had a right to appeal the sentence. Mr. Walker also explained that appealing the sentence for reasons other than those authorized by plea agreement would breach the plea

agreement. Mr. Walker testified that he told Defendant that he thought an appeal of the sentence would be frivolous and expose him to a greater sentence than imposed by the Court during the sentencing. Mr. Walker testified that the conversation lasted between twelve and eighteen minutes and that most of the conversation focused on Defendant's collateral attack options since Defendant expressed no interest in filing an appeal. Mr. Walker testified that Defendant affirmatively confirmed during that conversation that he did not wish to file a direct appeal.

Defendant offered no evidence to rebut Mr. Walker's testimony at the evidentiary hearing. The Court finds that Defendant has failed to meet his burden to establish that he told Mr. Walker to file a notice of appeal.

## CONCLUSION

The Court GRANTS IN PART Defendant's Motion to Vacate or Set Aside Sentence Under 28 U.S.C. § 2255 [438] [470]. The Court will schedule a new sentencing hearing as soon as practicable. Defendant will remain in custody until he is re-sentenced.

IT IS SO ORDERED.

DATED:   June 30, 2021          .

_Marco Hernandez_
MARCO A. HERNÁNDEZ
United States District Judge